UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 DEC 29  PM 12: 44

CLERK
BY_____
DEPUTY CLERK

RONALD D.,                              )
                                        )
            Plaintiff,                   )
                                        )
      v.                                )          Case No. 2:20-cv-00197
                                        )
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
            Defendant.                   )

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER
REVERSING THE DECISION OF THE COMMISSIONER AND GRANTING
THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 9 & 10)

Plaintiff Ronald Dassie is a claimant for Social Security Supplemental Security

Income ("SSI") payments under the Social Security Act ("SSA") and brings this action

pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security

Commissioner (the "Commissioner") that he is not disabled.[1] (Doc. 9.) The

Commissioner moves to affirm. (Doc. 10.) Plaintiff replied on June 29, 2021, at which

time the court took the pending motions under advisement.

After his application for SSI was denied initially and on reconsideration by the

Social Security Administration, Administrative Law Judge ("ALJ") Tracy LaChance

found Plaintiff ineligible for benefits based on her conclusion that he can perform jobs

that exist in significant numbers in the national economy and was therefore not disabled

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of
any medically determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less than
[twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or
mental impairment or impairments" must be "of such severity" that the claimant is not only
unable to do any previous work but cannot, considering the claimant's age, education, and work
experience, engage in any other kind of substantial gainful work which exists in the national
economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

between the application date of March 27, 2018 and December 18, 2019, the date of her decision.

Plaintiff identifies three errors in the disability determination: (1) the ALJ improperly evaluated medical opinion evidence; (2) the residual functional capacity ("RFC") finding is not supported by substantial evidence; and (3) the decision as a whole is not supported by substantial evidence. Plaintiff seeks a remand for a calculation of benefits.

Plaintiff is represented by Elaine T. Bodurtha, Esq. The Commissioner is represented by Special Assistant United States Attorney Natasha Oeltjen.

## I.    Procedural History.

Plaintiff filed his application for SSI on March 27, 2018, alleging a disability onset date of January 1, 2012[2] and identifying the following disabling conditions: osteoarthrosis of the knees, status post right knee replacement; spondylosis of the lumbar spine; anxiety; depression; personality disorder; opioid abuse disorder; and status post pulmonary embolisms. His claim was denied on September 5, 2018 and was denied again upon reconsideration on January 7, 2019. Plaintiff timely filed a request for a hearing, which was held before ALJ LaChance via videoconference on October 10, 2019. Plaintiff appeared via videoconference and was represented by counsel. Both Plaintiff and Vocational Expert ("VE") Lynn Paulson testified.

On December 18, 2019, ALJ LaChance issued an unfavorable decision from which Plaintiff administratively appealed. The Appeals Council denied review on October 6, 2020. Plaintiff subsequently appealed to this court in December 2021 and moved to reverse the ALJ's decision on April 17, 2021. On June 16, 2021, the Commissioner moved to affirm. Plaintiff replied on June 29, 2021.

## II.    ALJ LaChance's December 18, 2019 Decision.

In order to receive SSI under the SSA, a claimant must be disabled on or before

---

[2] Plaintiff alleged a disability onset date of January 1, 2012 but ALJ LaChance found "no reason to reopen any prior application for benefits" and therefore only "consider[ed] whether or not [Plaintiff] has been disabled as of March 27, 2018, the application date." (AR 10.)

the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

At Step One, ALJ LaChance found Plaintiff had not engaged in substantial gainful activity since March 27, 2018, the application date. At Step Two, she concluded that Plaintiff had the following severe impairments: osteoarthrosis of the knees, status post right knee replacement; spondylosis of the lumbar spine; anxiety; depression; personality disorder; and opioid abuse disorder. The ALJ found Plaintiff's pulmonary embolism was a non-severe impairment because Plaintiff takes an anticoagulation medication and the record does not show that his pulmonary embolisms "more than minimally limited [Plaintiff's] ability to engage in work-related activities[.]" (AR 13.) The ALJ further noted that "the hazard limitation in the residual functional [capacity] has been provided, in part, due to the risk of injury and bleeding due [to] the use of anticoagulant medication." *Id.*

3

At Step Three, ALJ LaChance found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. The ALJ analyzed Plaintiff's physical impairments under Listings 1.02, 1.03, and 1.04. She found that Plaintiff's impairments did not satisfy or equal Listing 1.02A because the record does not demonstrate Plaintiff's inability to ambulate effectively or the use of an assistance device for twelve or more months. Plaintiff's impairments did not meet Listing 1.02B because there is no imaging demonstrating major dysfunction of both upper extremities. With regard to Listings 1.03 and 1.04, ALJ LaChance found that the record does not demonstrate an inability to ambulate over a twelve-month period and there is no evidence that Plaintiff has a disorder of the spine resulting in compromise of a nerve root or his spinal cord.

Plaintiff's mental impairments were analyzed by ALJ LaChance under Listings 12.04, 12.06, and 12.08. ALJ LaChance found that Plaintiff's mental impairments did not meet any Listing because Plaintiff had only mild limitations in his ability to understand, remember, and apply information and because Plaintiff could complete tasks in a timely manner. The ALJ found Plaintiff had a moderate limitation in interacting with others, noted his reported difficulty dealing with conflict and being in crowds, but also acknowledged that he was pleasant and cooperative with generally a normal mood and affect. The ALJ found that Plaintiff had moderate limitation in concentrating, persisting, and maintaining pace and self-reported difficulty focusing. He was, however, attentive and scored thirty out of thirty on a mini-mental status examination and could play computer games, watch television, drive, and use public transportation.

With regard to adapting and self-management, the ALJ found that Plaintiff experienced mild limitations but did not require mental health counseling or regular urgent or emergency care for exacerbations in his mental health symptoms. He had adequate hygiene and intact judgment and insight. ALJ LaChance concluded that notwithstanding certain limitations, Plaintiff's severe mental impairments did not meet the requirements for any mental health Listing.

At Step Four, ALJ LaChance determined Plaintiff had the RFC to:

perform sedentary work as defined in 20 CFR 416.967(a) including stand
and walk up to 2 hours per day and sit up to 6 hours per day. However, the
claimant can only occasionally push and pull with the right lower
extremity. The claimant can never climb ladder[s], ropes, or scaffolds; can
occasionally climb ramps and stairs, balance, and stoop; and can never
kneel, crouch, or crawl. He must avoid concentrated exposure to hazards,
such as unprotected heights, dangerous machinery, and slippery or uneven
surfaces. The claimant is capable of simple tasks in 2-hour periods over a
typical 8-hour day, 40-hour week. The claimant maintains the social
capacity for routine interaction with supervisors and coworkers, but he may
have difficulty with intense social interactions. Hence, he should perform
no tandem tasks or collaborative work. In addition, the claimant can
tolerate occasional, incidental interaction with the public.

(AR 15.)

In light of this RFC, ALJ LaChance concluded Plaintiff could not perform his past
relevant work as described and as performed generally in the economy, including his
work as ski lift operator, stock clerk, or conveyor tender.

Plaintiff was forty-six as of his alleged onset date, placing him in the "younger
individual age 45-49" category as defined by the regulations. (AR 21.) Considering
Plaintiff's age, high school education, work experience, and RFC, ALJ LaChance
determined at Step Five that jobs exist in significant numbers in the national economy
which Plaintiff could perform including document preparer, table worker, and touch-up
screener. As a result, the ALJ concluded that Plaintiff was not disabled from March 27,
2018 through December 18, 2019, the date of her decision.

### III.    Conclusions of Law and Analysis.

#### A.    Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review
of the administrative record to determine if there is substantial evidence, considering the
record as a whole, to support the Commissioner's decision and if the correct legal
standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013)
(internal quotation marks and citations omitted). Substantial evidence is "more than a
mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citations omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### B. Whether the ALJ Applied the Incorrect Legal Standard in Evaluating Medical Opinion Evidence.

Plaintiff contends that ALJ LaChance "erred as a matter of law in her evaluation of opinion evidence[,]" (Doc. 9 at 12), because despite a change in regulation eliminating the so-called "treating physician's rule[,]"[3] the "essence of the rule remains the same" and therefore ALJ LaChance should not have relied on medical opinions from non-examining State Agency medical consultants in the face of well-supported and consistent opinions from Plaintiff's treating physicians and examining psychologists. *Id.* at 6. In particular, Plaintiff argues ALJ LaChance erred by "disregarding Dr. Lovko's opinion that during an eight-hour day [Plaintiff] needs to elevate his right leg two to three times for thirty to forty-five minutes" and by "disregarding opinions of examining psychologists regarding [Plaintiff's] limitations in social functioning and his inability to handle stress[.]" *Id.* at 12.

---

[3] The "treating physician's rule" required an ALJ to give "controlling weight" to a treating physician's medical opinion if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2). The "treating physician's rule" does not apply to cases filed on or after March 27, 2017. 20 C.F.R. §§ 416.927; 416.920c.

An ALJ must consider all medical opinions or prior administrative medical findings in the record. 20 C.F.R. § 416.920c(a). For claims filed on or after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* The "most important factors" an ALJ considers when "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency[.]" *Id.*

An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 416.920c(b). Because "supportability and consistency" are the most important factors, an ALJ must "explain how [they were] considered[.]" 20 C.F.R. § 416.920c(b)(2). Additional factors that an ALJ "may, but [is] not required to, explain" include: the relationship between the medical source and the claimant (including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the medical source has examined the claimant), specialization, and "other factors," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(b)(2), 416.920c(c)(3)-(5).

> Even without the "treating physician's rule[,]"

> Social Security regulations recognize the foundational nature of the examining physician's observations: consistency with those observations is a factor in determining the value of any doctor's opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). And when examining physicians do provide opinions, regulations suggest that they will often be given greater weight because the examining relationship provides them with a better understanding of an applicant's condition. 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

*Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018) (footnote omitted). However, the regulations make clear that an ALJ must not give "any" medical opinions "any specific evidentiary weight, including controlling weight[.]" 20 C.F.R. § 416.920c(a).

ALJ LaChance considered the medical opinions of State Agency medical consultants Leslie Abramson, M.D., Geoffrey Knisely, M.D., Edward Schwartzreich, M.D., and Howard Goldberg, Ph.D.; medical providers T. Ray Lovko, M.D., and Charles Carr, M.D.; and consultative examiners Dean Mooney, Ph.D., and Marc D. Carpenter, M.A. Plaintiff challenges ALJ LaChance's evaluations of the opinions of Dr. Lovko, Dr. Mooney, and Mr. Carpenter.

In a September 2019 opinion, Dr. Lovko, Plaintiff's treating physician, advised that Plaintiff could lift no weight on a frequent basis and must elevate his right leg to heart level at least two hours during the workday. ALJ LaChance found Dr. Lovko's "debilitating restrictions" and opinion "unpersuasive." (AR 20.) She found his opinion "not well-supported" because (1) "[t]he opinion is largely leading, offered on a form prepared by [Plaintiff's] representative with the need to elevate the leg for at least 2 hours detailed in an essentially yes/no question from the representative[,]" and (2) "[t]he opinion is also not supported by Dr. Lovko's most recent examination of [Plaintiff] in July of 2019 when he had no edema, normal strength, and no focal deficits." *Id.* (citations omitted). The ALJ found the opinion was "not consistent with the record as a whole as well, including the generally persuasive opinions from the State Agency medical consultants and the evidence showing no focal deficits, normal musculoskeletal motion (outside the right knee), intact strength and sensation, and normal gait/stance." *Id.* (citations omitted).

Consultative examiner Dr. Mooney opined in July 2018 that Plaintiff has "some" ability to carry out instructions, but "inadequate" ability to respond appropriately, a low frustration tolerance, and "inadequate" coping mechanisms. *Id.* (citations omitted). The ALJ found Dr. Mooney's opinion "unpersuasive" and "not well-supported" because (1) "it appears to rely heavily on [Plaintiff's] subjective complaints[,]" and (2) the consultative examination found Plaintiff "was 'slightly' irritable but scored a 30[/30] on a mini-mental status examination and was attentive and cooperative with logical thoughts." *Id.* (citations omitted). In addition, the opinion was "not consistent with the record as a whole, including the lack of consistent mental health counseling and the medical records

showing that [Plaintiff] was alert, oriented, cooperative, and pleasant with normal speech, the ability to answer questions appropriately, and intact judgement/insight." *Id.* (citations omitted).

In a June 2015 opinion, consultative examiner Mr. Carpenter stated that Plaintiff was having difficulty adjusting to the stressors related to his physical condition. The ALJ found this opinion "unpersuasive" because it was "not consistent with the record, including the lack of consistent mental health counseling for problems adjusting to stressors, his 30/30 score on a mini-mental status examination during the period at issue, and his denial of having problems dealing with stress in the record." (AR 20-21) (citations omitted). The ALJ further found the opinion was not well-supported because (1) Mr. Carpenter "opines on the impact of physical impairment, which is outside his area of expertise as a psychologist[,]" (2) "[the] opinion does not provide specific work restrictions in vocationally relevant terms[,]" (3) Mr. Carpenter "examined [Plaintiff] only once more than 2 years prior to the relevant period[,]" and (4) "as this opinion is quite old, it provides minimal insight into [Plaintiff's] current level of functioning." *Id.*

In considering the opinions of Dr. Lovko, Dr. Mooney, and Mr. Carpenter, and the remaining medical opinions, ALJ LaChance articulated how persuasive she found each medical opinion and explained how supportability and consistency were considered in reaching those determinations. *See* 20 C.F.R. § 416.920c(b)(2) ("[ALJs must] explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [a] determination or decision."). She also appropriately took note of the fact that Drs. Abramson, Knisely, Schwartzreich, and Goldberg had "program knowledge" and were "experts in disability evaluation under SSR 17-2p." (AR 20); *see* 20 C.F.R. § 416.920c(b)(2) ("[ALJs] may, but are not required to, explain how [they] considered[, among other things, a medical source's 'understanding of our disability program's policies and evidentiary requirements'], as appropriate, when [they] articulate how [they] consider medical opinions[.]") (quoting 20 C.F.R. § 416.920c(c)(5)). ALJ LaChance therefore applied the correct legal standard under 20 C.F.R. § 404.920c and her persuasiveness determinations as to the opinions of Dr. Lovko, Dr. Mooney, and Mr.

Carpenter were not legal error. *See Cichocki*, 729 F.3d at 175-76.

C.   **Whether ALJ LaChance's RFC Determination is Supported by Substantial Evidence.**

An RFC determination represents "the most [a claimant] can still do despite [their] limitations[,]" and is determined based on "all the relevant evidence" in the record. 20 C.F.R. § 416.945(a)(1). "In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (alterations in original) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). Plaintiff argues that the RFC "does not adequately reflect [his] limitations[,]" physical or mental. (Doc. 9 at 13.)

1. **Determinations Concerning Plaintiff's Physical Limitations.**

Plaintiff contends the physical limitations in the RFC are insufficient because they do not include Dr. Lovko's recommendation that Plaintiff elevate his right leg two to three times for thirty to forty-five minutes during the workday. Dr. Lovko's recommendation was made in response to the following question from Plaintiff's attorney:

> [Plaintiff] states that in order to keep his right knee swelling to a minimum, he needs to elevate his right leg, such that his foot is at heart level, for a total of at least 2 hours throughout an 8-hour day, as well as every evening. . . . Are these measures medically reasonable given his diagnosis(es)?

(AR 1429.) Dr. Lovko responded "Yes." *Id.* To the follow-up question, "If so, please state the likely [] cause of the right knee swelling[,]" Dr. Lovko referred to a previous answer, "TKR [total knee replacement] with ongoing inflammation with overuse[.]" *Id.* On the same form, Plaintiff's attorney asked, "How often and how long does [Plaintiff] need to elevate his right leg during an 8-hour day?" and "How high must the foot be elevated?" *Id.* at 1430. Dr. Lovko responded "2-3 times a day for 30-45 minutes[,]" and

"[approximately][4] waist high ideally[.]" *Id.* To the question, "How long is [Plaintiff] able to sit [without] elevating his legs on a full-time sustained basis? At one time? Total over an 8-hour day?" *id.* (emphasis omitted), Dr. Lovko responded three to four hours at one time and four to six hours over an eight-hour day. In response to further questions, Dr. Lovko opined that Plaintiff could lift or carry ten pounds occasionally and stand or walk thirty to forty-five minutes at one time and two to three hours over an eight-hour day.

Drs. Abramson and Knisely did not recommend any requirement that Plaintiff elevate his right leg during the workday. They both opined that Plaintiff, in an eight-hour workday, could occasionally lift or carry twenty pounds, frequently lift ten pounds, stand or walk with normal breaks for a total of three hours, and sit with normal breaks for a total of six hours. Plaintiff could also balance and stoop without limits and occasionally climb ramps, stairs, ladders, ropes or scaffolds; kneel; crouch; or crawl. Dr. Knisely added that Plaintiff should avoid concentrated exposure to hazards, such as machinery and heights.

VE Paulson testified that needing to raise a leg to waist level or higher during the day would make it "hard to keep on task and keep up production" and there may not be areas in the workplace to accommodate leg raising during breaks. (AR 87.) She noted that the Dictionary of Occupational Titles does not address leg raising and so she was "relying on [her] professional experience" for her testimony. *Id.* at 87-88.

ALJ LaChance found the opinions of Drs. Abramson and Knisely "generally persuasive" and the opinion of Dr. Lovko "unpersuasive[.]" (AR 19-20.) Plaintiff argues that the RFC more closely matches the restrictions given by Dr. Lovko's "unpersuasive" opinion than Dr. Abramson's and Knisely's "generally persuasive" opinions. According to Plaintiff, Dr. Lovko's opinion is consistent with sedentary work under 20 C.F.R. § 416.967(a), which the ALJ found as the RFC, while the opinions of Drs. Abramson and Knisely are inconsistent with sedentary work and qualify as light work under 20 C.F.R.

---

[4] Dr. Lovko's answer includes a tilde (~), which in this context appears "to indicate an approximate value[.]" *Tilde*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/tilde (last accessed Nov. 10, 2021).

§ 416.967(b). Plaintiff contends that because the ALJ accepted part of Dr. Lovko's opinion and rejected other parts, it undermines the characterization of that opinion as unpersuasive and impermissibly substitutes the ALJ's own judgment for medical opinions.

"[A]n ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions." *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015). But the "explanation need not be exhaustive: it is enough if the Court can 'glean the rationale of an ALJ's decision.'" *Chance v. Comm'r of Soc. Sec.*, 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019) (quoting *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). "Where the medical opinions and other evidence are not in complete agreement, the Social Security Administration empowers the ALJ to resolve '[g]enuine conflicts in the medical evidence[.]'" *Laurie M. v. Comm'r, Soc. Sec. Admin.*, 2020 WL 4282227, at *6 (D. Vt. July 27, 2020) (alteration in original) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). "'The fact that the assessed RFC does not perfectly correspond' with any single medical source opinion 'does not require remand, particularly where the ALJ explained, in detail, how he arrived at' his determination." *Id.* (quoting *Martina v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 118, 126 (W.D.N.Y. 2018)).

ALJ LaChance explained in detail how she arrived at her determination, which did not perfectly correspond to any medical opinion. In rejecting Dr. Lovko's recommended limitation that Plaintiff needed to raise his leg above heart level for two hours during the workday, ALJ LaChance noted the limitation was "largely leading, offered on a form prepared by [Plaintiff's] representative with the need to elevate the leg for at least 2 hours detailed in an essentially yes/no question from the representative." (AR 20) (citation omitted). *See Francese v. Astrue*, 2013 WL 3822159, at *11 (S.D.N.Y. July 24, 2013) (holding a "conclusory response" to a yes or no "leading question" on a form "was not entitled to significant weight"). Plaintiff argues that ALJ LaChance ignored Dr. Lovko's response to a subsequent question on that same form that indicated Plaintiff needed to elevate his leg waist high two to three times per day for thirty to forty-five minutes. "An

ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). While the subsequent question was not "essentially yes/no[,]" (AR 20), it was in response to a question from Plaintiff's attorney that presupposed the need for Plaintiff to elevate his leg during an eight-hour day and came after leading questions on the same subject. In response to question three on the form, Dr. Lovko opined that Plaintiff raising his right leg above heart level for two hours daily was "medically reasonable[,]" not a necessary restriction. (AR 1429.) In response to question six on the form, Dr. Lovko recommended Plaintiff elevate his leg waist high, not above the heart, two to three times a day for thirty to forty-five minutes. He does not indicate whether the thirty to forty-five minute time period is per elevation or a daily total. The difference between answers to questions three and six is not explained.

In addition, Dr. Lovko recommended elevation specifically to address inflammation linked to "overuse[.]" (AR 1429.) Plaintiff described his swelling as linked to being "active or stand[ing] for any long periods of time." (AR 1244); *see also* AR 1417 ("[Plaintiff] complains of pain and swelling in the knee. It is worse with activity. Some days are better than others. He just has some mild aching pain at rest but the pain is definitely more severe when he is more active."). "Precipitating and aggravating factors" which "affect [Plaintiff's] capacity to perform basic work activities" must be considered by the ALJ. 20 C.F.R. §§ 416.929(c)(3)(iii), 416.929(c)(4); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (holding that an ALJ "must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources") (internal quotation marks, alterations, and citation omitted). ALJ LaChance's RFC properly takes into account the aggravating factors reflected in the record, including Plaintiff's own description of what triggers his right knee swelling.

ALJ LaChance also found that a right leg elevation requirement was not supported by Dr. Lovko's July 2019 examination of Plaintiff at which Plaintiff's right leg had no

edema, normal strength, and no focal deficits. At the same exam, treatment notes reflect
"[l]ess pain and less swelling[,]" (AR 1424), and Dr. Lovko's care plan states that the
right knee is "[m]uch better" though "still sore if [Plaintiff] does too much but
[otherwise] pretty good[.]" *Id.* at 1427. Plaintiff contends that it was improper for ALJ
LaChance to "cherry pick treatment notes in order to find examples to minimize the
opinions of treating physicians[,]" (Doc. 9 at 9), and cites various treatment notes
showing knee swelling. Plaintiff's history of knee swelling, however, is addressed at
length in the ALJ's RFC determination, which notes multiple treatment records reflecting
swelling of the right knee but also multiple treatment records showing no swelling or
lessened swelling. Even with swelling, Plaintiff exhibited intact strength and sensation,
normal gait, no focal deficits, no lower extremity edema, excellent position and
alignment, and improved range of motion over time. While it is improper for an ALJ to
"cherry pick" evidence, in this case ALJ LaChance fully considered the evidence in the
record regarding Plaintiff's knee in determining appropriate physical limitations.

Finally, ALJ LaChance explained that Dr. Lovko's opinion was not persuasive
because it was inconsistent with the opinions of Drs. Abramson and Knisely. Plaintiff
argues Drs. Abramson and Knisely gave their opinions before Dr. Lovko and before the
January 2019 treatment notes of Eric Marsh, M.D., which "[e]ncouraged strengthening,
ice, compression, elevation," after Dr. Marsh observed on that occasion a "large effusion
in the knee." (AR 1416-17.) Plaintiff asserts Drs. Abramson and Knisely "may well have
opined otherwise if they had considered the later opinions, especially that of Dr. Marsh."
(Doc. 9 at 10.)

"State agency physicians are qualified as experts in the evaluation of medical
issues in disability claims[,] and their opinions may therefore constitute substantial
evidence if they are consistent with the record as a whole." *Karen S. v. Comm'r of Soc.
Sec.*, 2020 WL 4670911, at *13 (D. Vt. Aug. 11, 2020) (internal quotation marks and
citations omitted). "A state agency consultant's opinion does not become 'stale' due to
the existence of subsequent medical records as long as 'the additional evidence does not
raise doubts as to the reliability' of the opinion and the new evidence does 'not differ

materially' from the previously considered evidence." *Id.* (quoting *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016)).

Dr. Marsh's treatment notes and Dr. Lovko's opinion neither "differ materially" from the evidence considered by Drs. Abramson and Knisely nor "raise doubts as to the reliability" of the opinions of Drs. Abramson and Knisely. *Id.* (quoting *Camille*, 652 F. App'x at 28 n.4). Both doctors acknowledged Plaintiff's "soft tissue swelling" and pain. (AR 108, 131.) ALJ LaChance explained why she found their opinions consistent with the record as a whole and cited Dr. Marsh's treatment notes and the presence of effusion in explaining why her RFC departed from the opinions of Drs. Abramson and Knisely by providing "further exertional and postural limitations[.]" (AR 19.)

By rejecting Dr. Lovko's leg elevation restriction, Plaintiff argues that ALJ LaChance improperly substituted her own judgment for medical opinions. "Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). However, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).

ALJ LaChance's RFC reflects not only her consideration of the medical opinions, but Plaintiff's own description of his condition:

> [I]n the record, [Plaintiff] noted that swelling of the right knee typically occurs when active or standing for long periods, rather than when sitting [AR 1244]. He acknowledged that while his knee is sore if he does "too much," it is otherwise "pretty good" [AR 1427]. He also described his knee pain as "mild" pain at rest and he displayed a normal posture upon examination, which does not lend support to [his] allegations of problems sitting without elevating his feet [AR 1110, 1244, 1410].

(AR 16.) In addition, the ALJ cited "other evidence of record supports the [RFC,]" including the fact that Plaintiff "engaged in part-time work activity during the relevant period, including painting trim and helping a friend build a deck[,]" "acknowledged lifting up to 20 pounds while working[,]" and "perform[ing] personal care without issue,

preparing meals daily, and doing chores such as sweeping and mopping." (AR 18) (citation omitted). As a result, ALJ LaChance "did not draw medical conclusions; instead, and pursuant to [her] statutory authority, [she] considered the medical and other evidence in the record in its totality to reach an RFC determination." *Curry*, 855 F. App'x at 48 n.3 (citations omitted).

Because ALJ LaChance's determinations of Plaintiff's physical impairments in Step Four were supported by substantial evidence and the correct legal standards were applied, the court must affirm those determinations on appeal. *See Cichocki*, 729 F.3d at 175-76.

### 2.  Determinations Concerning Plaintiff's Mental Limitations.

Plaintiff claims he "would likely have difficulty performing even routine interactions with coworkers and supervisors on a consistent basis[] and he would not be able to handle any interaction with the public[,]" thus the mental limitations set forth in the RFC are "insufficient[.]" (Doc. 9 at 13.) He argues that ALJ LaChance's adoption of mental limitations recommended by State Agency consultants Drs. Schwartzreich and Goldberg, rather than limitations consistent with the opinions of examining consultants Dr. Mooney and Mr. Carpenter, was "contrary to the evidence as a whole." *Id.* at 13-14.

In August 2018, Dr. Schwartzreich opined that although Plaintiff has impairments due to anxiety and personality issues, he "retains the [concentration and persistence capacities] for 1-2 step tasks for 2 [hours] over an 8 [hour] period throughout a week/40 [hours]." (AR 111.) As to Plaintiff's social capacity, Dr. Schwartzreich stated, "[Plaintiff] retains the social capacity for routine interactions with supervisors and coworkers, but may have difficulty with intense social interactions. Interactions with the public should be kept to a minimum." *Id.* Dr. Goldberg offered an identical opinion in January 2019.

Dr. Mooney evaluated Plaintiff in July 2018 after the Vermont Disability Determination Services referred him for a Comprehensive Psychological Diagnostic Interview. He found Plaintiff "attentive and cooperative although slightly irritable, particularly during the [Mini Mental Status Examination]." (AR 1110.) Plaintiff's score of thirty on the Mini Mental Status Examination indicated no cognitive impairment. (AR

1113.) He determined that "[Plaintiff's] cognitive ability, judgment, and impulse control are adequate" and "[he] appears to have some ability to understand, remember, and carry out instructions in a work setting." *Id.* Diagnosing Plaintiff with anxiety and personality disorders, as well as opioid-related disorder by history, Dr. Mooney opined:

> [Plaintiff's] ability to respond appropriately to supervisors and coworkers is most likely generally inadequate, due to his irritability and occasional desire to not be around people. He appears to have low frustration tolerance and does not have adequate coping mechanisms to manage times he is irritated or angry. . . . [His] ability to respond to work pressures in a work setting may also be impacted by his medical issues.

*Id.* Dr. Mooney found the information provided by Plaintiff unreliable because he was "not forthcoming" about prior substance abuse. *Id.* For this reason, Dr. Mooney acknowledged that additional facts could yield "a more accurate diagnosis." *Id.*

In June 2015, Mr. Carpenter conducted a Comprehensive Psychological Diagnostic Interview of Plaintiff on referral from the Vermont Disability Determination Services, having previously completed a Consultative Examination with Plaintiff in November 2012. Mr. Carpenter found Plaintiff to be "a reliable reporter" and "cooperative and socially appropriate." (AR 1648, 1650.) Plaintiff scored twenty-eight out of thirty on the Mini Mental Status Examination. Mr. Carpenter concluded: "He is displaying symptoms of opioid addiction. He continues to meet criteria for agoraphobia with panic attacks, and he is having significant difficulty adjusting to the stressors related to his physical condition. His mental health seems to have worsened." (AR 1650.) Mr. Carpenter diagnosed "Agoraphobia with Panic Attacks[,]" "Opioid Use Disorder, Mild[,]" and "Adjustment Disorder with Mixed Anxiety and Depressed Mood." (AR 1651.)

Plaintiff argues it was improper for ALJ LaChance to rely on the opinions of non-examining consultants rather than examining consultants in determining his mental RFC. Although the existence of an examining relationship is relevant, it is not dispositive. *See* 20 C.F.R. § 416.920c(c)(3)(v) ("A medical source *may* have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews

evidence in your folder.") (emphasis supplied); 20 C.F.R. §§ 416.920c(c)(3)(i)-(iv) (explaining the length of relationship, frequency of examinations, purpose of the treatments, and extent of treatment relationship are also relevant); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017) ("A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.").

No mental health provider had an extensive relationship with Plaintiff. Dr. Mooney saw Plaintiff only once and found some of his reporting unreliable. Mr. Carpenter saw him on two occasions separated by three years and found his reporting reliable. Both Dr. Mooney and Mr. Carpenter conducted a state-ordered evaluation for benefits.

> [The Second Circuit has] frequently "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." This concern is even more pronounced in the context of mental illness where, as discussed above, a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health.

*Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian*, 708 F.3d at 419). In light of 20 C.F.R. § 416.920c(c)(3) and the limited examining relationships with Plaintiff, it was not improper for ALJ LaChance to find the opinions of Dr. Mooney and Mr. Carpenter unpersuasive. *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations[.]").

Plaintiff also challenges the ALJ's findings that Dr. Mooney's opinion was not supported because "it appears to rely heavily on [Plaintiff's] subjective complaints[,]" and Mr. Carpenter's opinion was not supported because "[he] opines on the impact of physical impairment, which is outside his area of expertise as a psychologist." (AR 20.) An ALJ is not permitted "to substitute [her] own expertise or view of the medical proof[.]" *Shaw*, 221 F.3d at 134.

Impairments must be "demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Medical source opinions simply relaying Plaintiff's representations may be determined to be less persuasive. *See Ratliff v. Barnhart*, 92 F. App'x 838, 840 (2d Cir. 2004) ("Given that this opinion was based solely on [the claimant's] representations rather than [the doctor's] first-hand observations, and in any event provides no evidence as to [the claimant's physical] condition in 1991, the ALJ was correct in not giving [the doctor's] opinion controlling weight."). More "objective medical evidence and supporting explanations" make medical opinions "more persuasive[.]" 20 C.F.R. § 416.920c(c)(1). However, there is no evidence that the Comprehensive Psychological Diagnostic Interviews conducted by Dr. Mooney and Mr. Carpenter used anything other than accepted diagnostic techniques, including patient interviews. *See Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) ("[C]ases involving mental health . . . are not susceptible to clear records such as x-rays or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."). It was thus error for the ALJ to discredit a mental health opinion on the grounds that it relied on what Plaintiff said in consultations.

Plaintiff is also correct that Mr. Carpenter did not "opine[] on the impact of physical impairment" (AR 20) but merely noted there were "stressors related to [Plaintiff's] physical condition[,]" to which Plaintiff was "having significant difficulty adjusting[.]" (AR 1650). Mr. Carpenter made those observations in the course of diagnosing Plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood, for which identifying a specific stressor is an integral part of the diagnosis.[5] It was legal error for ALJ LaChance to discount Mr. Carpenter's because it identified psychological stressors relating to physical conditions.

"An ALJ's failure to apply the correct legal standard constitutes reversible error if

---

[5] *See Adjustment Disorders*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/adjustment-disorders/diagnosis-treatment/drc-20355230 (last accessed Nov. 10, 2021) (listing diagnostic criteria of adjustment disorders from the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association).

that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). However, any legal error was harmless in this case because ALJ LaChance provided ample alternative grounds for finding the opinions of Dr. Mooney and Mr. Carpenter unpersuasive. *See Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (holding a reviewing court should not remand if "a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment"). ALJ LaChance pointed out that both opinions were relatively vague on specific workplace limitations. *See* AR 20 ("Dr. Mooney opined that [Plaintiff] has 'some' ability to carry out instructions but has 'inadequate' ability to respond appropriately with others, low frustration tolerance, and 'inadequate' coping mechanisms [AR 1110-14]."); *id.* ("[Mr. Carpenter's] opinion does not provide specific work restrictions in vocationally relevant terms."). An opinion is not persuasive if it is "so vague as to render it useless[.]" *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir.2000) ("[The medical expert's] use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that [claimant] can perform the [requisite] work.").

In addition, Mr. Carpenter's opinion reflected Plaintiff's mental health status two years prior to the relevant period and therefore "provides minimal insight into [Plaintiff's] current level of functioning." (AR 20-21.) Neither source had an ongoing treatment relationship with Plaintiff and neither source had treatment records to draw upon to support diagnostic opinions. Instead, each offered a snapshot of Plaintiff's mental status on a single date during the relevant period. Substantial evidence thus supported the ALJ's determination that the opinions of Dr. Mooney and Mr. Carpenter were unpersuasive. *See Pellam*, 508 F. App'x at 90 (finding substantial evidence existed to reject opinion of consultative examiner where opinion was "relatively vague[,]" inconsistent with record, and based on a single examination at which examiner thought plaintiff was not "completely forthcoming").

In determining the mental limitations in the RFC, ALJ LaChance considered other

evidence in the record, not just medical source opinions. She noted Plaintiff did not require any regular mental health counseling, emergency care, or hospitalization and denied having problems dealing with stress. Throughout the relevant period, treatment notes related to Plaintiff's physical condition consistently described him as alert, oriented, cooperative, with intact judgment and insight and normal mood and affect. Although at Dr. Mooney's examination Plaintiff was "slightly irritable," Plaintiff remained attentive, cooperative, and "greeted the clinician appropriately." (AR 18) (internal quotation marks omitted) (citing AR 1110-14). Plaintiff did not need reminders to take medicine or perform personal care, and self-reported abilities to follow instructions, count change, drive, take public transit, and play computer games. The ALJ found that he could be around others based on outings, shopping, socializing with friends and family, and living with his girlfriend. Plaintiff self-reported that he had never been fired or laid off from a job because of problems getting along with other people or authority figures.

Having properly considered the entire record in arriving at the mental limitations in her RFC, ALJ LaChance's determinations concerning Plaintiff's psychological impairments, and her RFC determination as a whole, were supported by substantial evidence. See *Curry*, 855 F. App'x at 48 n.3. The legal error in finding the opinions of Dr. Mooney and Mr. Carpenter unpersuasive on certain grounds was therefore harmless because it would not have changed the outcome and there was substantial evidence to find their opinions unpersuasive applying the correct legal standards. ALJ LaChance's RFC must therefore be affirmed. See *Cichocki*, 729 F.3d at 175-76.

**D.    Whether ALJ LaChance's Disability Determination is Supported by Substantial Evidence.**

Plaintiff argues that substantial evidence in the record demonstrates that he is disabled. "[W]hether there is substantial evidence supporting [Plaintiff]'s view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." *Lori P. v. Comm'r of Soc. Sec.*, 2021 WL 1207456, at *7 (D. Vt. Mar. 31, 2021) (second alteration in original) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x

58, 59 (2d Cir. 2013)). Upon independent review of the record, the court finds that ALJ LaChance's determination that Plaintiff was not disabled as of the date of his application is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's motion for an order reversing the decision of the Commissioner (Doc. 9) and GRANTS the Commissioner's motion to affirm (Doc. 10).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 29th day of December, 2021.

Christina Reiss, District Judge
United States District Court